IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| DOROTHY STALLING HURST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 113-193 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Dorothy Stalling Hurst ("Plaintiff") appeals the decision of the Acting Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I.   BACKGROUND

Plaintiff applied for DIB and Supplemental Security Income ("SSI") on June 7, 2010, alleging a disability onset date of July 1, 2007. Tr. ("R"), pp. 136-47. She last met the insured status requirements of the Social Security Act on March 31, 2011. R. 23. The Social Security Administration denied the applications initially, R. 87-94, and on reconsideration, R. 95-98, 100-103. The Social Security Administration denied Plaintiff's SSI application because she had

excess income. R. 87-94. Plaintiff then requested a hearing on her DIB application before the Administrative Law Judge ("ALJ"), R. 104-105, which was held on April 11, 2012. R. 38-83. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Mary Cornelius, a Vocational Expert ("VE"). Id. On May 25, 2012, the ALJ issued an unfavorable decision. R. 18-37.

Applying the five-step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 1, 2007, through her date last insured of March 31, 2011. (20 C.F.R. § 404.1571 *et seq.*).

2. Through the date last insured, the claimant had the following severe impairment[s]: bipolar disorder and an anxiety disorder (20 C.F.R. § 404.1520(c)).

3. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526).

4. Through the date last insured, the claimant had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels but with some nonexertional limitations. The claimant is able to perform simple routine tasks, but cannot perform detailed or complex tasks. She should not work with the public, but can have superficial contact with supervisors and coworkers. The claimant can work in generally [sic] proximity to others, but would work best with more solitary tasks. The claimant is able to perform positions that do not require a high production or production line type of work, but instead are more goal-oriented such as tasks per day. Furthermore, the claimant is limited to performing positions that require only occasional adaptation to changes in the work setting and occasional decision making commensurate with unskilled work. Through the date last insured, the claimant was capable of performing past relevant work as a landscape specialist and housekeeper. This work did not require the performance of work related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 404.1565).[1]

---

[1]Because the ALJ determined Plaintiff could perform her past relevant work, the sequential evaluation process could have stopped, and the ALJ could have concluded at that point Plaintiff was not under a disability, as defined in the Social Security Act. See 20 C.F.R. § 404.1520(a)(4)(iv).

5. In the alternative, based on the testimony of the VE, considering the claimant's age, education, work experience, and RFC, she would have been able to perform the requirements of representative occupations such as hand packer and hand launderer. Therefore, the claimant was not under a disability, as defined in the Social Security Act, at any time from July 1, 2007, the alleged onset date, through March 31, 2011, the date last insured. (20 C.F.R. § 404.1520(f)).

R. 23-31.

When the Appeals Council denied Plaintiff's request for review on August 29, 2013, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to: (1) give proper weight to treating physician Dr. John Dirksen's opinion, (2) consider the opinion of consultative examiner John C. Whitley, III, Ph.D., concerning her vulnerability to decompensation, and (3) include in the VE's hypothetical Dr. Whitley's opinion concerning Plaintiff's vulnerability to decompensation. (See generally doc. no. 12 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff's application is supported by substantial evidence and should therefore be affirmed. (See doc. no. 13 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 401 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145.

3

Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. The ALJ Properly Addressed the Opinions of Drs. Dirksen and Whitley.

#### 1. Weight of Opinion by Treating Physicians and Consulting Physicians.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (ruling that the ALJ must accord substantial or considerable weight to the opinion of a treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (same).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding her daily activities).

Although a treating physician's opinion must generally be given substantial weight, the same is not true of a consultative physician. As a general rule, the opinion of a one-time examiner

5

is not entitled to great weight and may be discredited by other evidence in the record. Crawford, 363 F.3d at1160-61. In particular, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 416.927(c)(1)-(2), (5).

### 2. The ALJ Properly Gave Little Credit to Dr. Dirksen's March 2012 Mental Impairment Questionnaire.

Plaintiff first argues that the ALJ failed to accord the proper weight to Dr. Dirksen's opinion. (Pl.'s Br., pp. 3-4) Dr. Dirksen completed a Mental Impairment Questionnaire on March 14, 2012, in which he checked several categories of mental abilities and aptitudes reflecting his opinion that Plaintiff was seriously limited or unable to meet competitive standards. R. 527-533. Dr. Dirksen opined that Plaintiff had (1) marked restrictions in activities of daily living, (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence, and pace, and (4) experienced one or two episodes of decompensation[2] of at least two weeks' duration within a twelve-month period. Id. at 531. Dr. Dirksen also opined that Plaintiff's Global Assessment Functioning Scale Score ("GAF")

---

[2]Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

currently and over the prior year had ranged from 50-55.³  Id. at 527.  The ALJ noted that this GAF suggested "moderate to serious difficulty in social, occupational, or school functioning." R. 24.  The ALJ assigned Dr. Dirksen's opinion "little weight."  R. 29.  As discussed below, the ALJ established good cause for assigning Dr. Dirksen's opinion little weight by citing the absence of medical evidence supporting Dr. Dirksen's opinions, substantial evidence pointing to contrary conclusions from Serenity Behavioral Health, and inconsistencies between Dr. Dirksen's opinion and his own medical records.  R. 24-29.

The ALJ first noted there was no evidence in the record that Plaintiff had experienced episodes of decompensation of at least two weeks' duration and that symptoms consistent with Dr. Dirksen's medical source statement were not reflected in his treatment notes from Plaintiff's monthly follow-up visits.  R. 24.  Indeed, Dr. Dirksen's progress notes reflected monthly prescription refills, but contained no discussions of functional limitations, and the lack of significant changes in medication implied to the ALJ that Plaintiff's symptoms were stable with no episodes of decompensation.  Tr. 29, 406-415, 515-517, 527-535.

Additionally, the ALJ noted that Plaintiff visited Serenity Behavioral Health three times during her time with Dr. Dirksen and reported some symptoms, but not to the degree characterized by Dr. Dirksen.  R. 24, 29.  During her most recent visit to Serenity on March 27, 2012, Plaintiff reported her mood was as stable as it could be, considering she was going to trial for a major court case related to a traumatic event.  R. 27, 536.  On examination, her affect was

---

³GAF scores of 41 to 50 indicate serious symptoms (suicidal ideation, severe obsessional rituals, or frequent shoplifting) or any serious impairment in social, occupational, or school functioning (having no friends or being unable to keep a job); scores of 51 to 60 indicate moderate symptoms (flat affect and circumstantial speech or occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (having few friends or conflicts with peers or coworkers).  Stone v. Comm'r of Soc. Sec., No. 13-12414, 2014 WL 4784117, at *2 n.2 (11th Cir. Sept. 26, 2014) (citing Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed. 2000)).

constricted, but her thought processes were goal directed, her insight and judgment were fair, and attention, memory, and concentration were grossly preserved. R. 27-28, 536. The ALJ noted that at this visit to Serenity, Plaintiff's GAF was estimated at 55, as compared to 49 at a visit in December of 2011. R. 24, 27-28, 467, 536.

In contrast with Dr. Dirksen's March 2012 opinion, the ALJ found that Plaintiff only had a mild restriction in activities of daily living because the record showed Plaintiff was "capable of initiating and participating in activities and taking care of her own personal needs without assistance." R. 24-25. In support, the ALJ noted that on September 17, 2010, Plaintiff reported to Dr. Whitley she was able to prepare simple meals using the microwave, perform household chores, go to the store twice a week, and drive an automobile. R. 24-25, 353. Additionally, on October 26, 2010, consultative examiner Dr. Juanita G. Trimor found that Plaintiff was able to feed herself and take care of her personal hygiene. R. 24-25, 377.

As to social functioning, the ALJ found that, in contrast to Dr. Dirksen's March 2012 finding of marked limitation, the record supported a finding of only moderate difficulties because Plaintiff was able to initiate social contacts, communicate clearly, and demonstrate cooperative behaviors. R. 25. In support, the ALJ cited Plaintiff's report to Dr. Whitley in September 2010 that she goes shopping, has a boyfriend of twelve years, and has good interactions with her mother and sister. R. 25, 351-53. Plaintiff repeated at the hearing that she goes shopping and has good interactions with her mother and sister. R. 25, 38-83.

Finally, as to concentration, persistence, and pace, the ALJ found that, in contrast to Dr. Dirksen's March 2012 finding of marked limitation, the record supported a finding of only moderate difficulties. R. 25. In addition to Plaintiff's ability to perform the basic activities of daily living, the ALJ cited Dr. Whitley's finding in September 2010 that Plaintiff's abstract

8

reasoning skills were within normal limits and she was able to understand and engage in conversation. R. 25, 353. Additionally, at her most recent mental status examination at Serenity in March 2012, the same month Dr. Dirksen completed the questionnaire, Dr. Adriana Foster noted Plaintiff's attention, memory, and concentration were grossly preserved. R. 25, 536.

In sum, the ALJ properly assigned Dr. Dirksen's March 2012 opinions little weight after considering all the evidence of record and finding the opinions unsupported by Dr. Dirksen's own treatment notes and contrary to substantial evidence in Plaintiff's medical records. Lewis, 125 F.3d 1440. Additionally, the ALJ considered all relevant evidence in determining whether Plaintiff met or medically equaled the listings and properly determined, based on substantial evidence, that she did not have marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, and pace, or had experienced one or two episodes of decompensation of at least two weeks' duration within a twelve-month period. 20 C.F.R. § 404.1520.

### 3. The ALJ Properly Gave Some Weight to Dr. Whitley's September 2010 Opinion.

Plaintiff next argues the ALJ failed to "state with particularity" the weight she gave Dr. Whitley's opinion that Plaintiff seemed vulnerable to decompensation because she did not specifically address it. (Pl's Br., pp. 5-6.) Dr. Whitley performed a consultative examination on September 17, 2010. R. 351-355. After an interview and mental status examination, Dr. Whitley opined that Plaintiff was (1) able to understand and engage in conversational speech; (2) somewhat limited in her ability to interact with supervisors and coworkers and would function best with more solitary tasks; (3) limited in her ability to organize information; and (4) able to keep up with a daily schedule, prepare meals, drive on a limited

basis, and manage her personal finances. Id. Dr. Whitley also stated, "at this time, she appears vulnerable to decompensate under minimal demands, expectations, and pressure." R. 354.

The ALJ gave some weight to Dr. Whitley's report, made adjustments to Plaintiff's RFC based on the report, and concluded Dr. Whitley did not describe limitations in functioning so severe that Plaintiff would be totally disabled. R. 29-30. Indeed, in contrast to Plaintiff's argument, the ALJ extensively discussed Dr. Whitley's opinion, including his statement regarding her vulnerability to decompensation and his other conclusions, and his assignment of a GAF of 56, which indicated only moderate limitations. R. 26-27, 29-30, 351-355; See Stone, No. 13-12414, 2014 WL 4784117, at *2 n.2.

Additionally, Dr. Whitley's statement is equivocal. Dr. Whitley stated that "at this time" in September 2010 Plaintiff "seemed vulnerable," but he did not directly opine that Plaintiff would decompensate in certain work-related scenarios. R. 354. In contrast, the ALJ assessed evidence extending into 2012 and found no evidence Plaintiff had actually experienced episodes of decompensation of at least two weeks' duration. R. 24.

Accordingly, the ALJ properly assigned Dr. Whitley's September 2010 opinion some weight after considering all the evidence of record, and he properly relied on substantial evidence when rejecting Dr. Whitley's opinion concerning vulnerability to decompensation and when determining Plaintiff's RFC. See Lewis, 125 F.3d 1440; Barron, 924 F.2d at 230.

**B.      The ALJ Properly Relied on the VE's testimony to Determine that Plaintiff Was Not Disabled.**

Plaintiff asserts that the hypothetical question to the VE was incomplete because it did not include Dr. Whitley's opinion regarding Plaintiff's vulnerability to decompensate. (Pl's Br., p. 6.) However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford, 363 F.3d at

1161 ("the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported"). As explained in detail in § III.A.3, *supra*, the ALJ discussed and properly rejected Dr. Whitley's statement regarding Plaintiff's vulnerability to decompensation. Because the hypothetical question presented to the VE accurately and comprehensively reflected Plaintiff's characteristics, the ALJ's reliance on her testimony was proper, and her determination that Plaintiff was not disabled is supported by substantial evidence. McSwain, 814 F.2d at 619-20; Pendley, 767 F.2d at 1562-63; Jones, 190 F.3d at 1229.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 19th day of November, 2014, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA